### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**Lynn T. Pasley,**

|  |  |
|---|---|
| **Plaintiff,** | **Civil Action No. 10-11805** |
| **vs.** | **District Judge Arthur J. Tarnow** |
| **Patricia Caruso, et al.,** | **Magistrate Judge Mona K. Majzoub** |
| **Defendants.** | |

_____/

## <u>REPORT AND RECOMMENDATION</u>

Several motions are now before the Court on Plaintiff Lynn T. Pasley's 42 U.S.C. § 1983 Eighth Amendment deliberate indifference to a serious medical need claim against various defendants. Defendants Elkins, Lange, and Unold, prison officers, have filed a motion for summary judgment on Plaintiff's claims. (Dkt. 48.) Defendants Noronha, Geml, and White, providers of medical care, have filed a motion to dismiss. (Dkt. 91.)

Plaintiff has filed a motion for order to show cause, two motions for preliminary injunctions and temporary restraining orders, a motion for writ of mandamus, a motion for leave to file a supplemental complaint, and a motion to compel discovery from Defendants Geml, Noronha, and White.[1] (Dkt. 42, 43, 82, 54, 79, 96.)

The Court has been referred these matters pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Dkt. 11.) The Court has reviewed the pleadings, dispenses with a hearing, and is now ready to issue

_____

[1]The Court recommends denying Plaintiff's motion for writ as moot, as the defendants he requests be served, have been served. (Dkt. 54.) Given that the Court recommends dismissing the claims against Defendants Geml, Noronho, and White, the Court recommends denying as moot without prejudice Plaintiff's motion to compel discovery from those defendants. (Dkt. 96.)

this report and recommendation.[2]

## I.      Recommendation

For the reasons stated below, the Court recommends: denying Defendants Elkins, Lange, and Unold's motion for summary judgment; granting Defendants Noronha, Geml, and White's motion to dismiss; denying Plaintiff's motion for order to show cause; denying Plaintiff's two motions for preliminary injunctions and temporary restraining orders; denying Plaintiff's motion for writ of mandamus; denying in part and granting in part Plaintiff's motion for leave to file a supplemental complaint, and denying Plaintiff's motion to compel discovery from Defendants Geml, Noronha, and White.

## II.     Report

### A.      Facts

Plaintiff has alleged an Eighth Amendment violation of his constitutional right to adequate medical care. Plaintiff is currently a prisoner at the Ryan Road Correctional Facility, in Detroit, Michigan. (Dkt. 100.) Plaintiff's complaint is based upon his allegation that various defendants repeatedly failed (and are continuing to fail) to treat a spot and discoloration on Plaintiff's penis that has spread to other areas of his penis, allegedly causing bleeding and oozing of puss, and allegedly resulting in pain and suffering.

Around September 20, 2008 Plaintiff states that, while incarcerated at the Macomb Correctional Facility, he first complained of, and was examined for, a spot on his penis. (Am. Compl. ¶ 15.) At that time, Plaintiff states that Defendant Patrick Geml performed a visual

_____

[2]The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court issues this report and recommendation instead of an order and report and recommendation because the issues that this Court could issue an order on are dependent upon several of the dispositive issues.

2

examination of Plaintiff's penis and prescribed a hydrocortisone cream. (*Id.* ¶ 16.) According to Plaintiff, Defendant Geml told Plaintiff to use the cream for thirty days and that if the cream did not help with the discoloration, Defendant Geml then would submit a referral to visit a specialist. (*Id.* ¶ 17.)

Plaintiff then had a follow up visit with Defendant Dr. Noronha. (*Id.* ¶ 18.) Plaintiff states that Defendant Noronha examined Plaintiff's penis, discontinued Plaintiff's hydrocortisone cream use, and did not put in place another treatment plan. (*Id.*)

Time passed and Plaintiff was transferred to the Adrian Temporary Correctional Facility. (*Id.* ¶ 19.) During his intake at the Adrian facility, Plaintiff states that he explained to the intake nurse that his condition had worsened. (*Id.*) Plaintiff maintains that the intake nurse told him that she would put him on a list to see the doctor. (*Id.*)

On March 3, 2009 Plaintiff states that he saw Defendant White, a physician's assistant. (*Id.* ¶ 20.) During that visit, Plaintiff says that he told Defendant White that his condition had worsened–the spot that was once small had spread over the entire head and foreskin of his penis, the pain had become unbearable, and the small spot had started bleeding. (*Id.* ¶ 21.) In response, Plaintiff states that Defendant White did not perform a visual examination or provide any treatment. (*Id.*) Plaintiff alleges that Defendant White stated that she would see Plaintiff at a later time about his condition. (*Id.* ¶ 22.)

On April 2, 2009 Defendant Kakani examined Plaintiff's penis. (*Id.* ¶ 23.) Plaintiff alleges that Defendant Kakani did not make any diagnosis or set up a treatment plan. (*Id.*) Plaintiff also alleges that he told Defendant Kakani about his pain and also discussed with her the alleged referral for a biopsy that Defendant Geml had suggested. (*Id.*) Plaintiff states that Defendant Kakani said

she would submit a request for the biopsy.  (*Id.*)

On June 24, 2009 Plaintiff was transferred to the Adrian Regional Correction Facility.  (*Id.* ¶ 24.)  At his intake there, Plaintiff states that he told the intake nurse about his condition, and he alleges that she told him that she would place his name on the list to see the doctor or physician's assistant.  (*Id.*)

On July 17, 2009 Plaintiff was transferred to the Florence Crane Correctional Facility.  (*Id.* ¶ 26.)  He states that, upon his arrival there, he immediately informed the intake nurse of his condition.  (*Id.*)  He states that the intake nurse informed Plaintiff that she would put him on the doctor or physician assistant list.  (*Id.*).

Plaintiff alleges that he did not see the doctor promptly; so on August 6, 2009, Plaintiff submitted a health care request to inform the staff of his condition.  (*Id.* ¶ 27.)  Plaintiff states that he still did not receive an appointment.  (*Id.* ¶ 28.)  So on August 21, 2009 he submitted another request.  (*Id.* ¶ 30.)  While waiting for the appointment, Plaintiff states that his pain became "unbearable" and he began to refuse all his medications until a doctor would see him. (*Id.* ¶ 29.)

On August 26, 2009 Plaintiff states that he finally had an appointment with Defendant Quelette.  (*Id.* ¶ 32.)  Plaintiff states that the appointment ended without an examination, due to a disagreement over signing a waiver.  (*Id.* ¶ 36.)  Plaintiff then complained to the warden and eventually received another appointment with Dr. Gelabert.  (*Id.* ¶ 38.)  Dr. Gelabert performed an examination and prescribed a steroid cream.  (*Id.* ¶¶ 36, 28.)  Plaintiff states that Dr. Gelabert questioned why Plaintiff had waited so long to get a diagnosis or a treatment plan.  (*Id.* ¶ 38.)

On October 27, 2009 Plaintiff was placed in segregation.  (*Id.* ¶ 40.)  Plaintiff states that when he was being moved to segregation his property was packed by Defendant Elkins."  (*Id.* ¶ 40.)

4

Plaintiff states that he informed Defendant Elkins that she had not packed his medication. (*Id.* ¶ 41.) Plaintiff alleges that Defendant Elkins responded that Plaintiff had too much property and that she was not going to go through all of his property just to retrieve his medication. (*Id.*)

While he was in segregation, Plaintiff states that he spoke with a nurse about his condition and his missing cream. (*Id.* ¶ 42.) He states that the nurse said that she would contact Defendant Lange, a residential unit officer, about retrieving the cream from Plaintiff's property. (*Id.*)

The nurse apparently did speak with Defendant Lange, because Plaintiff then maintains that Defendant Lange came to his cell and said that Plaintiff had too much property to look through to find just a small container of cream. (*Id.* ¶ 43.) Plaintiff asserts that he told Defendant Lange how painful his condition was and how important the cream was. (*Id.* ¶ 44.)

After his unsuccessful attempt with Defendant Lange, Plaintiff states that he waited until the next shift and asked Defendant Unold to retrieve the cream for Plaintiff. (*Id.* ¶¶ 45-46.) Plaintiff alleges that he told Defendant Unold how important the cream was and how much pain Plaintiff was experiencing. (*Id.* ¶¶ 46-47.) Defendant Unold responded, allegedly, that Plaintiff would be unable to receive the cream until after Plaintiff was released from segregation. (*Id.*) Plaintiff also states that Defendant Unold told him that Plaintiff had too much property to search through.

On May 4, 2010 Plaintiff filed his complaint against Patricia Caruso, Dr. Noronha, and physician assistants "Patrick [Geml]," Melissa White, Savithri Kakani, Margaret Quelette, and Rosalyn Jindal. (Dkt. 1.) On June 28, 2010 Plaintiff filed a motion for leave to amend the complaint. (Dkt. 9.) In the amended complaint, Plaintiff sought to add Kandy Elkins, Donald Lange, and Timothy Unold as defendants. On August 30, 2010 the Court granted Plaintiff's request. (Dkt. 15.)

5

1.      **The grievances**

Plaintiff has filed two grievances that are relevant to the pending motions.  Plaintiff appealed both grievances to the required steps and the MDOC affirmed Plaintiff's grievances at the final step. Because the grievances are the subject of several of the defendants' arguments, the Court presents them in full:

> Date of incident: August 26, 2009
> Date Plaintiff filed the grievance: August 29, 2009
>
> After PA Quelette tried to bargain with [Plaintiff] abou[t] signing the release form and [Plaintiff] refused and she refused to examine [Plaintiff's] medical problem [Plaintiff] told her then he was going to write a grievance[,] she said do what you got to do.
>
> On or about September 20, 2008, [Plaintiff] was incarcerated at the Macomb Corr. Facility, where he was first examined by P.A. Patrick [Geml] where [Plaintiff] complained of a small spot reflecting discoloration on the foreskin of his penis. There was visual examination performed but no diagnosis were made, medication was described [sic] (hydrocortisone cream) [Plaintiff] was informed to use the cream for 30 days and if it did not alleviate the discoloration he would submit a referral to visit a specialist.
>
> At a follow-up examination [Plaintiff] was evaluated by MD Noronha she examined [Plaintiff's] penis but again, no diagnosis[sic] were made, and the medication was discontinued [Plaintiff] was transferred to (ATF) on where [sic] he informed the receiving room nurse about his symptons [sic] and how they had worsened sense [sic] his last visit with MD. Noronha. [Plaintiff] was informed that he would be placed on call.  On or about March 3, 2009 [Plaintiff] was evaluated by (ATF) P.A. Melissa White this examination was a routine cronic [sic] care visit whereas all [Plaintiff's] medical needs were discussed [sic] [Plaintiff] specifically discussed the matter of discoloration on his penis and by this time the discoloration had spreaded [sic] over the entire head and forsskin [sic] of [Plaintiff's] penis, and [Plaintiff] was enduring a great deal of pain daily[.] The PA did not examine [Plaintiff's] penis nor did she attempt to make a diagnosis of the problem or set up a treatment plan.  On or about April 2, 2009 at a follow-up examination [Plaintiff] was interviewed by P.A. Savithri Kakani, she examined [Plaintiff's] penis, she did not make a diagnosis, nor set up a treatment plan, she stated that she would check into submitting a referral to see a specialist.

On June 24, 2009 [Plaintiff] was transferred to (ARF) during intake [Plaintiff] informed the receiving nurse about his problem and about the pain he has had to endure daily, she insured [sic] [Plaintiff] that she would have him placed on call. On or about July 7, 2009 [Plaintiff] was examined by PA Rosalyn Jindal again the matter was discussed and she did not examine [Plaintiff's] penis nor attempt to diagnose [sic] the problem or set up a treatment plan.

On July 17, 2009 [Plaintiff] was transferred to (ACF) immediately upon arrival [Plaintiff] informed the intake nurse of his problem and the pain that he was enduring and she informed [Plaintiff] that he would be place[d] on call. On August 6, 2009 [Plaintiff] submitted a health care request informing medical staff of the problem and the pain that he was enduring. [Plaintiff] received a response indicating that he would be scheduled to see the PA or DR. [Plaintiff] had been going through this painful situation for so long that he chose to refuse his meds until he be seen [sic] about this matter. [Plaintiff] again on August 21, 2009 submitted another health care request describing the same symptoms. [Plaintiff] received a response indicating an appointment would be set for August 26, 2009 to deal specifically with the pain that [Plaintiff] was having and the discoloration of his penis. On August 26, 2009 eleven months after [Plaintiff's] initial complaint he was permitted an examination with P.A. [] Quelette.

[Plaintiff] set [sic] down to discuss the pain he was enduring Quelette informed [Plaintiff] that she did not want to hear anything about pain, we are going to discuss you signing this form. When [Plaintiff] asked to see what she was talking about it was a form releasing the MDOC and medical staff from all responsibility if anything happen to me for not taking my meds. [Plaintiff] refused to sign the document and was threatened that if he didn't sign the document he would not be evaluated for the problem that he came over for. [Plaintiff] refused to sign and he was retaliated against and told to leave health care without any medical attention.

Later that same day [Plaintiff] talked to Deputy Warden Klee and informed him about the situation that had occurred at health care with PA Quelette, he told [Plaintiff] that he would handle the situation, the next day there was a call made to the housing unit indicating that the [illegible] would like to see me.

On August 27, 2009 [Plaintiff] was examined by Dr. R. Gelabert, [Plaintiff] informed the Dr. about his symptoms the Dr. indicated that he could not understand why [Plaintiff] had gone all these months without a diagnosis or a treatment plan set up, after his examination he prescribed (betamethasone dipropionate cream) and then informed [Plaintiff] that he would check into why the referral that was submitted in April was so delinquent.

MDOC health care has demonstrated deliberate indifference towards [Plaintiff's] medical needs. PA [Quelette] most definitely demonstrated deliberate indifference

towards [Plaintiff's] medical needs when she retaliated against [Plaintiff] using his medical condition as a bargaining tool.  Ignoring the fact that [Plaintiff's] medical problem was causing him chronic pain that interferes with his ability to conduct tasks associated with his daily living.

Plaintiff took this grievance through the appropriate levels. (Defs. Noronha, Geml, and White's Mot.

to Dismiss, Ex. B.)

> Date of incident: October 27, 2009
> Date of grievance: October 31, 2009
>
> Plaintiff stated that he attempted to resolve the issue on October 28, 2009.  He stated, "[a]fter making my second attempt to get the cream with no luck, I inform[ed] Lange that I will be writing a grievance and he said do what you go to do.
>
> On 10-27-2009 [Plaintiff] was placed in T/S, Officer Elkins packed up my property and did not leave out all [Plaintiff's] meds, specifically, his mediated cream. RN Rider informed Officer Lange that I need this cream and would he get the creame [sic] from my property or allow me to get it.  Officer Lange stated that I had to[o] much property and he was not going to go through all my property looking for some cream.  He then stated that inmates are not allowed cream in seg anyway.  This same attempt was made with the 2 to 10 shift and Officer Unold stated basicly [sic] Nurse Rider made it perfectly clear to these officers how important it was that I be allowed to use this creme. [sic] Still to this day I still have not been able to use my cream. This cream was prescribed by the doctor to help aliviate [sic] the pain and suffering that I experience. RN Rider stated to me that she left a note with the Doctor indicating that he could possibly force someone to get the creame [sic] from my property.

Plaintiff took this grievance through step three of the grievance process.   (Defs.' Noronha, Geml, and White's Mot. to Dismiss, Ex. C.)  Plaintiff has provided additional facts that are relevant to several later motions that he filed.  The Court will present those facts as it addresses the relevant motions.

### C.    Analysis

#### 1.    The defendants' motions for summary judgment or to dismiss for failure to exhaust administrative remedies

Defendant Elkins argues that Plaintiff did not file a grievance against her and because he failed to do so, he failed to exhaust his administrative remedies, thereby requiring the Court to dismiss the claims against her for that failure.  (Dkt. 48, Defs.' Elkins, Lange, and Unold's Mot. for Summ. J. at 3.)  Defendants Geml, Noronha, and White also argue that dismissal is appropriate because Plaintiff failed to exhausted his administrative remedies as to his claims against them.

### a.  The PLRA requires a prisoner to exhaust the administrative remedies available to him

The PLRA requires a prisoner to exhaust the administrative remedies available to him.  The PLRA's exhaustion provision specifically states that:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement is a "strong one."  *Napier v. Laurel Cnty., KY*, 636 F.3d 218, 222 (6th Cir. 2011).  The requirement requires a plaintiff to exhaust his remedies even if he "subjectively believes the remedy is not available, when the state cannot grant him the relief he requests, or even when the plaintiff believes the requirement would be ineffectual or futile."  *Id.* (quotation marks and citations omitted).

"The point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court."  *Reed-Bey v. Pramstaller*, 603 F. 3d 322, 324 (6th Cir. 2010) (citation omitted).

"An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's

grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F. 3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 95 (2006)).

'Exceptions' to strict adherence to the procedural rules exist, though; if the prison system overlooks or forgives a procedural failing and addresses a grievance on the merits, then the prisoner has exhausted that grievance. *Id*. at 323 ("Because the Michigan Department of Corrections opted to dismiss [the plaintiff's] grievance on the merits rather than invoke its procedural bar, [the plaintiff] exhausted his claim.").

### b. Plaintiff has exhausted his administrative remedies against the moving defendants

Here, the Court finds that Plaintiff has exhausted his administrative remedies against those defendants whom he mentioned in the two grievances: Quelette, Geml, Noronha, White, Kakani, Jindal, Gelabert, Elkins, Lange, and Unold. Plaintiff has met the purpose of the PLRA's exhaustion requirement–Plaintiff has put these defendants on notice that he is suing them for their alleged deliberate indifference to his medical condition.

The Court recognizes the defendants' arguments that Plaintiff did not comply with the MDOC policy governing grievances, as Plaintiff failed several of the timeliness requirements. *See* Policy Directive 03.02.130.[3]   But here, Plaintiff took the grievances through the MDOC's

---

[3]Grievance Process

Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration.  If the issue is not resolved, the grievant may file a Step I grievance.  The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate

administrative process and the MDOC ruled on the merits of Plaintiff's deliberate indifference claim. Following *Reed-Bay*, then Plaintiff has done all that is required of him to exhaust his remedies and the Court will not dismiss the claims against the moving defendants for Plaintiff's failure to exhaust. Because the MDOC did not enforce its timeliness procedural requirements, neither will the Court. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2009) ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we.").

### 2.   The defendants' motions for summary judgment or to dismiss relating to Plaintiff's deliberate indifference claim

Defendants Elkins, Lange, and Unold argue that Plaintiff has failed to prove a deliberate indifference claim. They argue that Plaintiff first has not shown that Plaintiff's medical condition was sufficiently serious. They then argue that Plaintiff has not established that Defendants Elkins, Lange, and Unold had sufficiently culpable states of mind. (Dkt. 48, Defs. Elkins, Lange, and Unold's Mot. for Summ. J. at 7.)

Defendants Geml, Noronha, and White argue that Plaintiff's complaint against them fails to state a deliberate indifference claim. (Dkt. 91, Defs. Geml, Noronha, and White's Mot. to Dismiss at 2.) They therefore request that the Court dismiss the complaint pursuant to Rule 12(b)(6).

### a.   Motion for summary judgment standard

---

staff.

The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issues being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

(Dkt. 48, Def.'s Elkin's Mot. for Summ. J., Ex. 2, MDOC Policy Directive, Grievant Process.)

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than

12

simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### b.   Rule 12(b)(6) motion to dismiss standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. See *Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

13

common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Id.* (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Id.* at 1949 (internal quotation marks and citation omitted).

### c.    Failure to provide medical treatment standard

To establish a constitutional violation of the right to adequate medical care, a plaintiff must prove two components–one objective, the other subjective.  *Jerauld ex rel. Robinson v. Carl*, No. 09-5714, 2010 WL 5439796, at *5 (6th Cir. Dec. 30, 2010).

The objective component requires a plaintiff "to allege facts showing that the medical need at issue [wa]s sufficiently serious."  *Id*.  (internal quotation marks and citation omitted).  A plaintiff can show that a medical need was sufficiently serious by alleging facts that "show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004).  A plaintiff can also show that a medical need is "objectively seriously" if the medical condition is "one that has been diagnosed by a physician as mandating treatment."  *Id*. (citation, quotation marks, and emphasis omitted).

14

The subjective component requires a plaintiff to "allege facts which, if true, would show that (1) the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, (2) that he did in fact draw the inference, and (3) that he then disregarded that risk." *Id.* (internal quotation marks and citation omitted). A plaintiff can satisfy the subjective component by showing that the officer or official was deliberately indifferent to the plaintiff's serious medical needs. *Cain v. Irvin*, 286 F. App'x 920, 926 (6th Cir. 2008) (citation omitted). "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Jerauld ex rel. Robinson*, 2010 WL 5439796, at *5 (internal quotation marks and citations omitted).

### i.    Objective component

Defendants Elkins, Lange, and Unold first argue that Plaintiff has not demonstrated that his medical condition was sufficiently serious. The Court disagrees. For the purposes of these motions, viewing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has created an issue of fact as to whether his medical condition was sufficiently serious. Plaintiff has created this issue of fact with his allegations of pain and his allegation that he had been prescribed medication for his medical condition.

Plaintiff has submitted an affidavit that he was in pain. (Dkt. 57, Pl.'s Aff. ¶ 3.) He has further stated that this pain was "chronic pain associated with [his] [penis.]" (*Id.* ¶ 10.) *See also* (Dkt. 55, Pl.'s Resp. to Defs.' Mot. for Summ. J. at 7.) ("The pain that Plaintiff had to endure daily would be characterized as a burning, constant throbbing, nagging feeling. The pain is intermitted [sic] and most times is exacerbated when urinating and showering. The pain has an average intensity of 7/10.") These allegations are sufficient to withstand a motion for summary judgment.

15

*See Burton v. Kakani*, 09-10893, 2011 WL 330370, at *4 (E.D.Mich. Aug. 3, 2011) (Battani, J.) ("Courts have regularly held that pain can be a 'sufficiently serious' medical need for purposes of a deliberate indifference claim.")(citations omitted).

Plaintiff has also stated that he had a prescription for his medical condition.  (*Id.* ¶ 8.)  While the defendants have alleged that Plaintiff's prescription had expired, Plaintiff counters that he had remaining refills that the health department had not yet refilled.  The Court finds that this allegation is sufficient to create an issue of fact as to whether Plaintiff's condition was "sufficiently serious."  *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004) (holding that a plaintiff can also show that is medical need is "objectively seriously" if the medical condition is "one that has been diagnosed by a physician as mandating treatment.").  For the purpose of this motion, the Court finds that Plaintiff has created an issue of fact on the objective component.

### ii.   Subjective component

### A.   Defendant Elkins, Lange, and Unold

Against Defendant Elkins, Plaintiff has alleged that he asked her to pack his medication, told her that he was in pain and "needed [his] medication."  (Dkt. 57, Pl.'s Aff. ¶ 3.)  He alleges that Defendant Elkins told him that he had too much property and that she was not going to go through the property to find his medication.  (*Id.* ¶ 4.)  Against Defendant Lange, Plaintiff stated that he asked him to retrieve his medication and told him he was in pain.  (*Id.* ¶ 5.) Plaintiff stated that Defendant Lange responded that he would not go through all of Plaintiff's property to look for a small container of cream.  (*Id.*)  Plaintiff stated the same facts against Defendant Unold.  (*Id.* ¶ 6.)

These defendants have submitted affidavits countering Plaintiff's facts.  (Defs.' Mot. for Summ. J., Exs. B, F, G.)

16

But these affidavits just highlight the issue of fact regarding the subjective component. Here, Plaintiff has alleged that he informed Defendants Elkins, Lange, and Unold that he was experiencing pain and that he needed his medication. Plaintiff has also alleged that he requested each of these defendants to retrieve his prescription cream and they specifically told him that they would not. This pointed refusal, when Plaintiff told these defendants of his pain and requested the means to alleviate the pain (his prescription cream), is sufficient to withstand the motion for summary judgment. *See Jerauld ex rel. Robinson*, 2010 WL 5439796, at *5 ("Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.") (internal quotation marks and citations omitted). *See also Broder v. Correctional Med. Servs., Inc.*, 03-75106, 2008 WL 704296, at *2 (E.D.Mich. Mar. 14, 2008) (Battani, J.) (quoting, "[f]ailure to respond to an inmate's known medical needs raises an inference that there was deliberate indifference to those needs." (insertion in *Broder*, citation omitted)).

### 1.      Defendant Elkins, Lange, and Unold are not entitled to qualified immunity

Defendants Elkins, Lange, and Unold argue that they are entitled to qualified immunity for the actions they took against Plaintiff. The Court does not agree.

The doctrine of qualified immunity shields "'government officials performing discretionary functions'" from "'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court must determine "whether:  1) the violation of a constitutional right has

occurred; and 2) the constitutional right at issue 'was clearly established at the time of defendant's alleged misconduct.'"  *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and citing *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004)); *see Lawler v. City of Taylor*, 268 F. App'x 384, 387 (6th Cir. 2008) (stating that the court "[a]ccept[s] [the plaintiff's] testimony as true and giv[es] his evidence the benefit of all reasonable inferences.")

Here, because the Court finds that there is an issue of fact as to whether Defendants Elkins, Lange, and Unold violated Plaintiff's constitutional rights, the Court finds that they are not entitled to qualified immunity at this time.

The Court therefore recommends denying Defendants Elkins, Lange, and Unold's motion for summary judgment.

## B.      Defendants Geml, Noronha, and White

Defendants Geml, Noronha, and White argue that Plaintiff fails to state a claim of deliberate indifference against them.  (Defs.' Mot. to Dismiss at 13.)  They argue that Plaintiff has not alleged facts that would demonstrate the subjective component of a deliberate indifference claim.  The Court agrees with them.

Plaintiff states that Defendant Geml examined the small red spot on Plaintiff's penis, made no diagnosis, but prescribed hydrocortisone cream.  (Dkt. 27, Am. Compl. ¶ 16.)  Plaintiff adds that Defendant Geml told Plaintiff to use the cream for thirty days, and if the cream failed to work, that he would submit a referral for Plaintiff to see a specialist.  (*Id*. ¶ 17.)

Plaintiff alleges that he had a follow up visit with Defendant Noronha.  (Am. Compl. ¶ 18.) At that visit, he states that Defendant Noronha made no diagnosis of his condition and that she

18

discontinued the cream use, and failed to give a reason for doing so.  (*Id.*)

Against Defendant White, Plaintiff alleges that she evaluated him and discussed his medical problems with him.  (Am. Compl. ¶ 20.)  Plaintiff states that he discussed his penis's discoloration and how long the discoloration had been going on.  (*Id.* ¶ 21.)  In his amended complaint, Plaintiff states that, by the time of his visit with Defendant White, the pain had become unbearable; but he did not state that he told Defendant White about the pain.  (*Id.*)  Plaintiff alleges that Defendant White did not examine his penis or provide any treatment.  (*Id.*)  He states that "[s]he just demonstrated deliberate indifference."  (*Id.*)  He adds that Defendant White told Plaintiff that she would see Plaintiff on a later date, but that second visit never happened.  (*Id.* ¶ 22.)

With these defendants, Plaintiff has not alleged that they did anything that the Court could find would constitute deliberate indifference to his medical condition.  Plaintiff has not alleged any degree of culpability greater than mere negligence, if even that.

The Court therefore recommends granting Defendants Geml, Noronha, and White's motion to dismiss for failure to state a claim and dismissing them from this case.

### 3.      Plaintiff's motion for leave to file a supplemental complaint

Plaintiff has filed a motion for leave to file a supplemental complaint.  (Dkt. 79, Pl.'s Mot. to Suppl.)  Defendants Noronha, Geml, and White have filed a response.  (Dkt. 84.)  Defendants Jindal, Kakni, and Quelette have also filed a response.  (Dkt. 86.)

### a.      Rule 15 supplemental pleadings standard

"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date

19

of the pleading to be supplemented." Fed.R.Civ.P. 15(d).

"The same standard of review and rationale that apply to amending a claim under [Rule 15(a)] apply to supplementing a complaint." *Brutz v. Stillwell*, 09-2564, 2010 WL 1924471, at *18 (N.D.Ohio May 12, 2010) (citing *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002). "[J]ustice does not require leave to supplement 'if there has been undue delay, bad faith, dilative motive, or repeated failure to cure the deficiency by amendments previously allowed.'" *Id*. (citation omitted). "Further, leave to supplement should also not be granted if the supplemental complaint would result in undue prejudice to the opposing party or if the supplemental complaint would be futile." *Id*. (citation omitted).

"When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 459 (6th Cir 2001) (citation omitted). While "[d]elay alone does not justify denial of a motion [to amend], "the party seeking to amend should 'act with due diligence if it wants to take advantage of [Rule 15's] liberality.'" *Block v. Sears Roebuck and Co*, 07-15323, 2009 WL 36483, at *3 (E.D.Mich. Jan. 6, 2009) (Lawson, J.) (citations omitted).

"Courts are especially inclined to deny a motion brought under Rule 15 if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for his failure to plead them." *Tompone v. Richmond*, 10-11776, 2011 WL 1532157, at *4 (E.D.Mich. Apr. 22, 2011) (Duggan, J.) (internal quotation marks and citations omitted).

> **b.     The Court recommends granting in part and denying in part Plaintiff's motion to amend/supplement**

The Court recommends granting in part and denying in part Plaintiff's request to amend/supplement his complaint. The Court first recommends denying Plaintiff's request because Plaintiff could have raised several of the allegations and added two of the parties in his last motion to amend, and he failed to do so–this argument applies to additional facts Plaintiff seeks to add against Defendants Geml, Noronha, and White and the new proposed defendants Jackson and Cohen. The Court next recommends denying Plaintiff's request as to the additional proposed defendants of Dr. Nancy McGuire, Dr. Bhamini Sudhir, Dr. Adam Edelman, Dr. Bergman, Dr. Harriet Squier, and Prison Health Service because Plaintiff has not alleged that these defendants acted in a way that would satisfy the subjective component of a deliberate indifference claim. But as to proposed defendant Beals, the Court recommends allowing Plaintiff to supplement his complaint, for the reasons that follow.

### i.     The Court recommends denying Plaintiff's motion to supplement as to the current defendants

Defendants Geml, Noronha, and White first argue that Plaintiff's proposed supplemental complaints asserts new allegations against them that occurred before Plaintiff's amended complaint. (Dkt. 84, Defs.' Geml, Noronha, and White's Resp. to Pl.'s Mot. at 1-2.) Defendants cite the proposed paragraphs twenty-six, twenty-eight, and twenty-nine. (*Id*. at 2.) Defendants maintain that Plaintiff's proposed supplemental complaint is actually a second amended complaint, which they further maintain is unduly delayed and brought in bad faith. (*Id.*)

The Court agrees with Defendants Geml, Noronha, and White's argument. Plaintiff seeks to add facts that he could have added in his first amended complaint. Because he could have added those facts in his first amended complaint, and waited just under a year, without seeking to amend

prior, the Court finds that his proposed supplemental complaint as to Defendants Geml, Noronha, and White is in bad faith. The Court therefore recommends striking paragraphs twenty-six, twenty-eight, and twenty-nine from Plaintiff's request.

Plaintiff also attempts to add allegations that occurred before his first amended complaint, with paragraphs eighty-two and eighty-four. Plaintiff has offered no explanation why he first makes these allegations in his request to supplement and not before. The Court therefore recommends striking  paragraphs eighty-two and eighty-four.

### ii.    The Court recommends denying Plaintiff's request as to the remaining proposed defendants except as to proposed defendant Beals

Defendants Kakani, Quelette, and Jindal have also filed a response to Plaintiff's motion to amend. (Dkt. 86, Defs.' Kakani, Quelette, and Jindal's Resp. to Pl.'s Mot. to Am.) These Defendants first argue, as Defendants Geml, Noronha, and White, that Plaintiff's motion is improper because it seeks to add facts that occurred before Plaintiff's original complaint. (*Id*. at 4.) They then argue that the Court should deny the entire amendment/supplement because the amendment/supplement is futile. (*Id*. at 5.) They argue that it is futile for two reasons. They first argue that Plaintiff "admits that he has not fully exhausted his administrative remedies prior to filing suit." (*Id.*) They then argue the amendment/supplementation is futile because it could not survive a Rule 12(b)(6) motion to dismiss. They argue so, stating that Plaintiff has not brought forth facts against the new defendants to show that they were deliberately indifferent to his serious medical needs. (*Id*.) Defendants Kakani, Quelette, and Jindal maintain that, at best, Plaintiff has simply shown that he disagrees with the defendants' treatment of his penis, a disagreement that does not show a constitutional violation. (*Id.*)

22

In his request to supplement, Plaintiff moves to add P.A. Latonya Jackson, Dr. Zivit Cohen, Dr. Nancy McGuire, Dr. Bhamini Sudhir, Dr. Adam Edelman, Dr. Bergman, Dr. Harriet Squier, LPN Karine Beals, and Prison Health Service as defendants. (Pl.'s Mot. to Suppl. at 2.) He states that these defendants are continuing the Michigan Department of Correction Medical Staff's deliberate indifference to Plaintiff's serious medical needs. (*Id.*) He alleges that "the underlying circumstances of his medical condition ha[ve] changed significantly between the filing of the original action and [the current date of filing.]" (*Id.*) He further alleges that the pain "that he suffers on a daily basis [has become] unbearable and [] affects his daily activities." (*Id.*)

Against proposed Defendant Jackson, Plaintiff alleges, that on January 7, 2010, Jackson evaluated Plaintiff and discussed his pain with him. (Dkt. 80, Proposed Suppl. Compl. ¶ 66.) At this evaluation, Plaintiff alleges that Jackson was unable to diagnose what was wrong with his penis. (*Id.* ¶ 70.) He adds that, on January 27, 2010, Jackson prescribed a cream and a powder for him to use. (*Id.* ¶ 71.) Plaintiff asserts that Jackson was deliberately indifferent to his serious medical needs because she merely documented his worsening condition and prevented him from receiving appropriate treatment. (*Id.* ¶ 74.)

Against proposed Defendant Cohen, Plaintiff alleges that on April 13, 2010, she examined his penis, discussed his pain with him, and discontinued his cream and powder use. (Dkt. 80, Proposed Suppl. Compl. ¶ 75, 76.) Plaintiff alleges that Cohen diagnosed Plaintiff's condition as vitiligo. (*Id.* ¶ 77.) Plaintiff summarily alleges that Cohen "failed to act on Plaintiff's repeated complaints of pan, the cracking of the skin, [and] the bleeding and discoloration of the penis[.]" (*Id.* ¶ 78.) Plaintiff adds that Cohen's conduct was a "substantial departure from accepted professional judgment." (*Id.* ¶ 78.)

23

Plaintiff then asserts a set of allegations that occurred in 2011. He alleges that on February 24, 2011, proposed Defendant McGuier evaluated him. (Dkt. 80, Proposed Suppl. Compl. ¶ 79.) He states that he told her about his pain and that he requested a specialist's opinion and that he requested something for his pain. (*Id.*) Plaintiff maintains that McGuirer examined his penis and denied Plaintiff the opportunity to see a specialist and seek "a pain management committee for drugs to treat Plaintiff's plain." (*Id.* ¶ 80.) Plaintiff further maintains that McGuirer ignored his request for treatment for both pain and his condition and that McGuier made the decision "perfectly aware of the substantial risk to Plaintiff's serious medical needs." (*Id.* ¶ 81.) Plaintiff states that the defendants should have discovered Plaintiff's illness "taking all necessary measures." (*Id.*)

In April, 2011 Plaintiff states that Dr. Weeks submitted a request for a consultation/evaluation for circumcision. (Dkt. 80, Proposed Suppl. Compl. ¶ 86.) This request, Plaintiff alleges, was denied by proposed defendant Edelman a week later. (*Id.*) Plaintiff states that Edelman prescribed a different treatment–that Plaintiff continue using a prescription cream. (*Id.*)

In May, 2011 Plaintiff states that Dr. Weeks submitted another request for Plaintiff to receive a circumcision. (Dkt. 80, Proposed Suppl. Compl. ¶ 87.) Plaintiff states that Edelman and proposed defendant Bergman again denied this request and again instructed cream use. (*Id.*)

Plaintiff also alleges, "Plaintiff was evaluated by Dr. Rhodes and she concurred with Weeks on several issues, First, the cream is causing Plaintiff's condition to worsen. Second, circumcision is the viable solution to relieve Plaintiff of his pain and suffering." (Dkt. 80, Proposed Suppl. Compl. ¶ 90.) Plaintiff then alleges, that Dr. Rhodes submitted a request on July 8, 2011, for circumcision. (*Id.* ¶ 91.) Plaintiff states that proposed defendant Harriet Squier denied this request. (*Id.*) He states that Squier again suggested that Plaintiff continue the cream use and also suggested

that Plaintiff use vaseline.  (*Id*. ¶ 92.)

Plaintiff argues that Edelman, Bergman, and Squier have "doggedly" persisted in a course of treatment that they knew to be ineffective and have allowed "Plaintiff to suffer pain when relief is readily available[.]" (*Id*. ¶ 95.)  Plaintiff further alleges that Weeks, Rhodes, and the urologist "concluded that circumcision would relieve Plaintiff of his pain and suffering."  (*Id*. ¶ 95.)

On May 23, 2011, Plaintiff states that he began seeing a new medical provider, proposed defendant Bhamini Sudhir.  (Dkt. 80, Proposed Suppl. Compl. ¶ 99.)  Plaintiff states that he told Sudhir that he was experiencing excruciating pain on a daily basis.  (*Id*.)  He states that he also informed Sudhir about Dr. Weeks and Dr. Edelman's alternative treatment plans.  (*Id.* ¶ 100.) Plaintiff further explains that, at this visit, Sudhir did not examine his penis or advise Plaintiff of Edelman's treatment plan.  (*Id*. ¶ 101.) Plaintiff alleges that Sudhir told him that she would look into Plaintiff's former treatment plans and that she would get back to him, but Plaintiff alleges that she never did.  (*Id*.)  Plaintiff states that, due to Sudhir's delay, he was not able to treat his condition until roughly a month after he was supposed to.  (*Id*. ¶ 103.)

Plaintiff alleges that Sudhir was deliberately indifferent due to her interrupting Plaintiff's treatment plan.  (Dkt. 80, Proposed Suppl. Compl. ¶ 104.)  Plaintiff states that Sudhir "acknowledged . . . that it was her fault for the delay in starting the treatment plan indicating that she was busy." (*Id*.)  During the time Plaintiff was not receiving treatment, he alleges that his condition was rapidly deteriorating.  (*Id*. ¶ 105.)

Plaintiff also seeks to add Karina Beals as a defendant.  (Dkt. 80, Proposed Suppl. Compl. ¶ 106.) Against Beals, Plaintiff states that he asked her to contact a doctor.  (*Id*.)  Plaintiff states that Beals said to send a kite and that he would then see a doctor.  (*Id*.)  Plaintiff alleges that Beals was

"well aware" of Plaintiff's medical condition. (*Id.* ¶ 107.) He further alleges that he asked Beals to examine his penis and she responded that she was busy and did not want to be bothered. (*Id.*) He adds that Beals did not contact Sudhir when he requested that she do so. (*Id*. ¶ 108.) Plaintiff additionally alleges that he filed several grievances against Beals and she stated that he would pay for filing those grievances. (*Id.* ¶ 110.) He states that Beals "neither administered first aid nor medical assistance despite [his] plea for medical attention[.]" (*Id*. ¶ 114.) He also states that "Beals . . . intentionally interfered with prescribed treatment [that] Plaintiff was instructed to report to Health Service twice daily to apply the prescribed vaseline." (*Id*. ¶ 115.)

Plaintiff concludes that each of the defendants "should have also recognized that circumcision was the superior treatment." (Dkt. 80, Proposed Suppl. Compl. ¶ 121.)

He seeks to add Prison Health Services as a defendant, as it is the "entity responsible . . . for providing medical care to those housed at the G Robert Cotton Correctional Facility." (Dkt. 80, Proposed Suppl. Compl. ¶ 127.)

As to proposed defendants Jackson and Cohen, the Court recommends denying Plaintiff's request to supplement. The allegations against these two proposed defendants took place before Plaintiff filed his motion to filed an amended complaint. Yet the amended complaint contained no allegations against these two defendants and no explanation as to why he did not seek to amend the complaint with these defendants. The Court therefore finds, as above, that Plaintiff exercised bad faith in not naming these proposed defendants before, and the Court therefore recommends denying Plaintiff's request to supplement his complaint with these two defendants.

As to the defendants' argument that the supplemental complaint is futile because Plaintiff has failed to exhaust his administrative remedies, the Court disagrees. There are exceptions to the

26

strict adherence to exhaustion requirement.  One exception exists where an ongoing medical condition is present and there is a "claim that the state stood by and did nothing in the face of that ongoing condition." *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011) (citing *Ellis v. Vadlamdi*, 568 F.Supp.2d 778 (E.D.Mich. 2008)).  On this request for a supplemental complaint, the Court is unwilling to dismiss when Plaintiff has alleged a continuing harm that could fall within an exception to the exhaustion requirement.

But the Court finds that the granting the motion to file a supplemental complaint would still be futile as to the majority of the remaining defendants, as Plaintiff's allegations against these defendants do not form a claim of deliberate indifference.  The allegations against the proposed defendants, Dr. Nancy McGuire, Dr. Bhamini Sudhir, Dr. Adam Edelman, Dr. Bergman, Dr. Harriet Squier, and Prison Health Services, do not show deliberate indifference.  The allegations show that these proposed defendants attempted to address Plaintiff's condition.  Plaintiff has not alleged that these proposed defendants acted in a way that was greater than mere negligence.

Plaintiff has shown that he did receive reasonable treatment at his requests.  Plaintiff's argument is that he did not receive the type of treatment he wanted.  A disagreement over treatment does not give rise to a deliberate indifference claim.  *See Dotson v. Phillips*, 385 F. App'x 468, 471 (6th Cir. 2010) (stating,"federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law;" and  "[the plaintiff's] claim fails because he can only allege negligence, not deliberate indifference, as prison medical personnel provided care to him at every stage of his injury.").  *See also White v. Corr. Med. Servs., Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004) ("Any perceived deficiencies in [the plaintiff's treatment] amount to only negligence or a difference of opinion.").

27

The Court finds Plaintiff's proposed supplement futile as to these defendants and recommends denying Plaintiff's request to supplement.

But the Court does not find that a supplemental complaint as to proposed defendant Beals would be futile.  In his proposed complaint, Plaintiff alleges that she knew of his pain and that she did nothing about his pain.  Plaintiff states also that he requested Beals to examine his penis and she said that she was "busy and didn't want to be bothered."  (Dkt. 80, Pl.'s Proposed Suppl. Compl. ¶ 107.)  Plaintiff further states that Beals prevented Plaintiff's access to Sudhir.  (*Id.* ¶ 108.)  Plaintiff adds that Beals also intentionally interfered with his prescribed treatment.  (*Id.* ¶ 115.)  With Beals, then, the Court finds that Plaintiff should be permitted to supplement his complaint as to her.  The Court therefore recommends that Plaintiff's complaint be supplemented as to Beals, and that he should submit a supplemental complaint within thirty days.[4]

### 4.    Plaintiff's motion to show cause and motions for preliminary injunctions and restraining order

Plaintiff has filed a motion to show cause and for a temporary restraining order and two motions for a preliminary injunction and a temporary restraining order.  (Dkt. 42, 43, 82.)  In his motion to show cause, he requests that the Court order Defendants Jindal, Kakani, Noronha, Geml, Quelette, White, Elkins, Unold, and Lange to appear at the courthouse and require the defendants to "provide a medically appropriate course of treatment to [] Plaintiff designed to restore and maintain the full function of his penis."  (Dkt. 43, Mot. to Show Cause.)  He also requests, in the show cause motion, an order that the defendants arrange for Plaintiff "to be examined by a qualified

---

[4]The Court recommends that the supplemental complaint should only contain the additional allegations against Beals, and should not include any new allegations against any present or proposed defendant.

specialist and obtain from that specialist an evaluation of the condition of Plaintiff's penis and a

prescription for a course of treatment that will restore and maintain the full function of his penis."

(*Id.*)  In his preliminary injunction motion, he requests that the Court issue an order that the

defendants be required to provide him with a circumcision.  (Dkt. 82, Pl.'s 2d Mot. for Prelim. Inj.

at 11.)

### a.    Preliminary injunction additional facts

Plaintiff has provided additional, recent, facts and medical records with his second motion

for a preliminary injunction.  The Court discusses those relevant facts and records and the

defendants' response here.

On April 19, 2011 Plaintiff saw Dr. Weeks for an initial urology visit.  (Dkt. 82, Pl.'s 2d

Prelim. Inj., Ex. A.) Dr. Weeks evaluated Plaintiff for "circumcision or alternative treatment."  (*Id.*)

Dr. Weeks made the following finding:

> [Plaintiff] has a constricting ring around [his] penis. [Plaintiff] experiences daily pain
> and bleeding from his foreskin. Currently, he has [a] circular band [that is] half [an]
> inch that is white in color.  The color change appears to be related to long term
> retraction of his foreskin. [Plaintiff] states that the foreskin will retract if his penis
> is completely relaxed but still quite painful.  In addition to the pain and bleeding he
> has a decreased urinary velocity when urinating.

(*Id.*) Dr. Weeks noted that Plaintiff had not received results from long term topical treatment.  (*Id.*)

Dr. Weeks then prescribed beclomethason cream for Plaintiff to use for eight weeks.  (*Id.*)  Dr.

Weeks wrote to the medical staff, "[m]ake sure [Plaintiff] is compliant. Make sure [Plaintiff] only

uses the cream on the foreskin as it causes skin [atrophy.] In this case, that is the effect we are

looking for."  (*Id.*)

On May 4, 2011 Plaintiff saw Dr. Weeks again.  (Dkt. 82, Pl.'s 2d Prelim. Injunc., Ex. B.)

At this visit, Dr. Weeks noted that Plaintiff's symptoms were getting worse from the treatment. (*Id.*) He then noted that he discussed Plaintiff's case with the urology department, "which recommended that circumcision is a viable option after failed medical therapy." (*Id.*)

On July 8, 2011 Plaintiff saw Dr. Rhodes. (Dkt. 82, Pl.'s 2d Prelim. Injunc., Ex. C.) Dr. Rhodes noted that Plaintiff's symptoms were getting worse. (*Id.*) A biopsy showed chronic inflammation, but no abnormal cell growth. (*Id.*)

Plaintiff also saw Dr. Squier on that day. (Dkt. 82, Pl.'s 2d Prelim. Injunc., Ex. D.) Dr. Squier noted that the skin on Plaintiff's penis was still cracking and that Plaintiff was experiencing pain in the cracked skin area. (*Id.*) Dr. Squier wrote that the steroid cream had not been working. (*Id.*) Dr. Squier also wrote that she would request a dermatological/urological examination. (*Id.*)

In August, 2011 Dr. Squier wrote a medical order for Plaintiff to use Vaseline on Plaintiff's cracking skin. (Dkt. 82, Pl.'s 2d Prelim. Injunc., Ex. E.)

Plaintiff has submitted a declaration in support of his preliminary injunction. (Dkt. 83, Pl.'s Decl.) He states that two doctors and a urologist have agreed that "in order to relieve Plaintiff of the pain and suffering . . . [he needs a] circumcision." (*Id.* ¶ 3.) He adds that he "cannot retract the foreskin of [his] penis without suffering excruciating pain." He says that he experiences this pain when he showers or uses the restroom. (*Id.* ¶¶ 5, 4.) He also says that his foreskin "continues to crack and bleed" and that the steroid cream is causing a greater part of the damage to the skin. (*Id.* ¶ 5.)

Plaintiff alleges that the defendants have the responsibility to provide him with the necessary treatment–circumcision. (Pl.'s Decl. ¶ 8.)

Dr. Squier has submitted an affidavit in response to Plaintiff's motion.  (Dkt. 87, Defs. Jindal, Kakani, Quelette's Resp. to Pl.'s Mot. for Prelim. Inj., Ex. 1, Squier Aff.)  In it, she states that she is familiar with Plaintiff's medical issue.  (*Id.* ¶ 4.)  She adds that, from her review, Plaintiff has a "chronic, very slowly progressive condition for which there have been no recent or dramatic changes for which he would require emergent treatment."  (*Id.*)

She notes that Plaintiff has been diagnosed with vitiligo (discoloration) and erythema (a skin redness and irritation with varied causes).  (Squier Aff. ¶ 5.)  She acknowledges that doctors have tried various alternative treatment plans.  (*Id.*)  She states that a review of Plaintiff's file shows that he is unhappy with his medical provider's judgment that he should try alternative treatment plans. (*Id.*)

Dr. Squier points out that Plaintiff had not had any recent health care visits regarding his medical issue. (Squier Aff. ¶ 6.)  She notes that Plaintiff visited the health department on September 6, 2011, but that Plaintiff did not complain about his penis.  (*Id.*)  She also notes that Plaintiff voluntarily stopped all of his medications during August, 2011.  (*Id.*)

Dr. Squier has formed a opinion about Plaintiff's past treatment. (Squier Aff. ¶ 7.)  She states that "[n]othing in the file suggests [] that [Plaintiff] is suffering any medical consequences relating to the chronic irritation of his penis."  (*Id.*)  She adds that the record does not show any evidence of a urinary tract infection or obstructions and that the record only supports intermittent pain when Plaintiff "attempts to retract [his] foreskin[.]"

Dr. Squier addresses Plaintiff's disagreement with his treatment.  (Squier Aff. ¶ 8.)  She acknowledges that Plaintiff wants a circumcision, but states that because of the risks associated even with minor surgery, Plaintiff's current, more conservative treatment plan, is more appropriate.  (*Id.*)

31

She adds that "[Plaintiff's] condition will be followed and re-evaluated with an eye toward surgery should he complain of new or continuing symptoms." (*Id.*)

> **b.     Preliminary injunction and temporary restraining order standard of review**

In deciding whether to grant a preliminary injunction, a court considers: "(i) whether the movant is likely to succeed on the merits; (ii) whether the movant will suffer irreparable injury in the absence of an injunction; (iii) whether the injunction will cause substantial harm to others; and (iv) whether the injunction would serve the public interest." *Capobianco v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). If fewer than all four of the factors are dispositive, a district court need not make specific findings on all four. *Int'l Longshoremen's Ass'n AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir. 1991), *cert. den.* 502 U.S. 813 (1991) (citation omitted).

Plaintiff bears the burden to show that the circumstances "clearly demand" the extraordinary remedy that is a preliminary injunction. *Overstreet*, 305 F.3d at 573. The burden of proof for a preliminary junction is "much more stringent than the proof required to survive a summary judgment motion." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (citation omitted).

The burden further increases, in situations where "a plaintiff seeks an injunction not merely to maintain the status quo . . . but to obtain affirmative relief." *See Allen v. Shawney*, 11-10942, 2011 WL 5838480, at *4 (E.D.Mich. Oct. 5, 2011) (Hluchaniuk, Mag. J.) (adopted in full, 2011 WL 5838581 (E.D.Mich. Nov. 18, 2011)) (citation and emphasis removed). Because a preliminary

injunction's purpose is to preserve the status quo, three types of preliminary injunctions are particularly disfavored: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." *Id.* (quoting *Schrier v. University of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005)).

The Prisoner Litigation Reform Act imposes additional restrictions on a prisoner's request for a preliminary injunction. It requires that the prisoner's "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(2).

### c.    Analysis

Plaintiff has a substantial burden in his request for an order to show cause and motions for preliminary injunctions. Plaintiff has not satisfied his burden. As the Court has discussed above, Plaintiff has alleged that the defendants were and currently are being deliberately indifferent to his health.[5] But, for these injunctive relief motions he has failed to establish that there is a likelihood that he would succeed with that claim if his motions were not granted.

Courts presented with similar facts have found "[w]ith respect to [the] plaintiff's general request for an injunction requiring [the] defendants to provide [the plaintiff] with appropriate

---

[5]"[I]t is not enough for [a] plaintiff to merely show that [the] defendants were, during the course of his treatment, deliberately indifferent to his medical needs. To be entitled to injunctive relief, [the] plaintiff must also show that [the defendants] continue to be deliberately indifferent, such that [the] defendants' acts or omissions are likely to cause [the plaintiff] future harm." *Rhinehart v. Scutt*, 10-10006, 2010 WL 3701788, at *5 (E.D.Mich. Aug. 16, 2010) (Komives, Mag. J.) (adopted in full by 2010 WL 3701787 (E.D. Mich. Sept. 15, 2010)(Diggs Taylor, J.)).

treatment, [the] plaintiff has failed to establish a likelihood of success on a claim that [his] current treatment plan is deliberately indifferent." *Allen v. Shawney*, 11-10942, 2011 WL 5838480, at *5 (E.D.Mich. Oct. 5, 2011) (Hluchaniuk, Mag. J.) (adopted in full, 2011 WL 5838581 (E.D.Mich. Nov. 18, 2011)). In *Allen*, the plaintiff, as here, "appear[ed] to simply disagree with the course of her treatment." *Id*. There, the court found that a disagreement over treatment did not amount to a constitutional violation. *Id*. And because that disagreement did not amount to a constitutional violation, the plaintiff consequently was not entitled to a preliminary injunction, because she was destined to be unable to establish a likelihood of success on the merits. *Id*. ("The record currently before the [c]ourt shows that [the] plaintiff has received, and continues to receive, medical care, treatment, and medications from [the] defendants. [The plaintiff] appears to simply disagree with the court of her treatment. This disagreement does not state an Eighth Amendment claim."). Courts around the nation have held similarly. *See Perkins v. Kansas Dept. of Corr.*, 165 F.3d 803, 811(10th Cir. 1999) (citation omitted) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."); *see also McSorley v. Norther Nevada Corr. Ctr.*, 225 F. App'x 448, 449 (9th Cir. 2007) ("Although [the plaintiff] [] raised some very serious allegations about his medical care, appellant is currently . . . . receiving medical treatment. He has not sufficiently demonstrated that he is currently receiving a level of care that would violate constitutional standards such that he is entitled to preliminary injunctive relief.").

Here, Plaintiff has alleged that he has not been treated in a way that he believes is appropriate. To be sure, he has alleged that he is experiencing extreme pain in a sensitive area. He additionally alleges that the defendants generally are not giving him proper treatment. But that disagreement, without more, does not establish a constitutional violation. The Court further has

reviewed the medical evidence in the record.  The medical records that Plaintiff has submitted show that the doctors that Plaintiff saw were treating, albeit conservatively treating, Plaintiff's condition. Plaintiff's problem with the treatment, it seems, is that he wants a circumcision immediately, whereas the doctors appear to want to try a more conservative treatment first.  But the records show that the physicians are treating him, and are considering, in the future, that circumcision would be the appropriate treatment.

Further support for this holding exists in Dr. Squier's affidavit.  Her affidavit supports denying Plaintiff request for a preliminary injunction based upon the second factor–irreparable harm. Dr. Squier states that Plaintiff has a slowly progressing condition, but that there have not been any recent or dramatic changes that requires emergency treatment.  (Squier Aff. ¶ 4.)  She adds that Plaintiff voluntarily stopped his medication in August, 2011, and that, in September, 2011, he did not complain of any distress with his foreskin or penis.  (*Id*. ¶ 6.)  And Dr. Squier further adds that Plaintiff experiences intermittent pain when Plaintiff retracts his foreskin only.  (*Id.* ¶ 7.)  Dr. Squier states that, as a consultant on Plaintiff's case, she will follow Plaintiff's condition and that the doctors will consider a circumcision if Plaintiff's symptoms continue or get worse.  (*Id*. ¶ 8.)  Dr. Squier concludes that she has not identified any urgent or life threatening issue that Plaintiff's doctors have not addressed.  (*Id*. ¶ 9.)

The Court finds that, because Plaintiff has not established that he is likely to succeed on the merits of his deliberate indifference claim against those defendants able to provide him medical care to treat his condition, the Court recommends denying Plaintiff's motion to show cause and motions

for preliminary injunctions.[6]

**D.   Conclusion**

For the reasons stated above, the Court recommends: denying Defendants Kandy Elkins, Donald Lange, and Timothy Unold's motion for summary judgment; granting Defendants Noronha, Geml, and White's motion to dismiss; denying Plaintiff's motion for order to show cause; denying Plaintiff's two motions for preliminary injunctions and temporary restraining orders; denying Plaintiff's motion for writ of mandamus; denying in part and granting in part Plaintiff's motion for leave to file a supplemental complaint, and denying Plaintiff's motion to compel discovery from Defendants Geml, Noronha, and White.

**III.   Notice to parties**

The parties to this action may object to and seek review of this report and recommendation, but are required to file any objections within fourteen days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).   Failure to file specific objections

---

[6]Defendants Geml, Noronha, and White have responded to Plaintiff's motions for preliminary injunctions.  (Dkt. 85, Defs. Geml, Noronha, and White's Resp. to Pl.'s Mot. for Prelim. Inj.)  They argue that the preliminary injunction is moot as to them because they are neither no longer work for the Michigan Department of Corrections or they no longer work at the same facility where Plaintiff is located.  (*Id*. at 2.)  Defendants Oulette, Jindal, and Kakani also argue that the preliminary injunction is moot as to them.  (Dkt. 87, Defs. Oulette, Jindal, and Kakani's Resp. to Pl.'s Mot. for Prelim. Inj. at 1.)  They also argue that they are no longer at the same correctional facility as Plaintiff and that they therefore cannot provide him the relief he seeks.  (*Id.*)  The Court finds that this argument is an appropriate alternate means of denying Plaintiff's motions for preliminary injunctions.  *See Cardinal v. Metrish*, 564 F.3d 794, 798-99 (6th Cir. 2009) (holding that the prisoner's injunctive relief request was rendered moot when he transferred to a new facility) (citation omitted).  The Court therefore finds that this argument is an alternative means of denial.  But because the Court finds that Plaintiff generally cannot show that he is entitled to a preliminary injunction against any of the defendants, the Court relies upon the broader denial.

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filling objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this report and recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2). Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 10, 2012        s/ Mona K. Majzoub

                                                   Mona K. Majzoub

                                                   United States Magistrate Judge

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

37

Dated: February 10, 2012                   s/ Lisa C. Bartlett
                                           Case Manager